# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEO KHAYET ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. |
| ) | |
| DENNIS BOERSEN ) | |
| ) | |
| Individually, and ) | |
| ) | |
| BOERSEN FARMS, INC. ) | |
| ) | |
| and ) | |
| ) | |
| BOERSEN FARMS AG, LLC ) | |
| ) | |
| and ) | |
| ) | |
| BOERSEN AG PARTNERS, LLC ) | |
| ) | |
| and ) | |
| ) | |
| BOERSEN TRANSPORT, INC. ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR PRELIMINARY AND PERMENANT INJUNCTION

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Leo Khayet, by and through counsel, and submits his Complaint for Preliminary and Permanent Injunction against Dennis Boersen, Boersoen Farms, Inc., Boersen Farms AG, LLC, Boersen AG Partners, LLC, and Boersen Transport, Inc. (hereinafter referred to as "Defendants") and respectfully shows the following:

1

## I. PARTIES

1. Plaintiff Leo Khayet is an individual residing at 13249 High Drive, Leawood, Kansas.

2. Defendant Dennis Boersen is an individual residing in the State of Michigan.

3. Defendant Boersen Farms, Inc., is a Michigan corporation with its principal place of business located in the State of Michigan and a registered office address of 6421 Ransom St., Zeeland, Michigan 49464.

4. Defendant Boersen Farms AG, LLC is a Michigan limited liability company with its principal place of business located in the State of Michigan and a registered office address of 6421 Ransom St., Zeeland, Michigan 49464.

5. Defendant Boersen Farms AG Partners, LLC, is a Michigan limited liability company with its principal place of business located in the State of Michigan and a registered office address of 6421 Ransom St., Zeeland, Michigan 49464.

6. Defendant Boersen Transport, Inc. is a Michigan corporation with its principal place of business located in the State of Michigan and a registered office address of 6421 Ransom St., Zeeland, Michigan 49464.

## II. JURISDICTION

7. Jurisdiction and venue are proper in this Court pursuant to the forum selection clause located in the Parties' contract, which was fully executed on or about February 3, 2017 (hereinafter referred to as the "Agreement" and is attached hereto as "Exhibit 1").

## III. NATURE OF THE CASE

8. This is a breach of contract action. On or about February 3, 2017, Plaintiff entered into the Agreement with Defendants, the terms of which gave Plaintiff the exclusive right to act as an exclusive financial advisor for purpose of helping the Defendants secure a refinancing agreement

for the Defendants' outstanding debt obligations. On or about February 7, 2017, Defendants began a blatant and ongoing breach of the Agreement by attempting to secure a refinancing agreement outside of the Parties' Agreement. This breach has continued to the date of this Complaint and prompted its necessity.

## IV.   FACTUAL BACKGROUND

9. On or about December 28, 2016, Defendants executed a contract titled "Exclusive Agreement for Fee" with the other parties being Mike Still, Michael Winemiller, Mahdi Dezham and Robert Jenevein (hereinafter referred to as "Marketers"), the terms of which stated that Defendants would pay Marketers Fifty Million Dollars ($50,000,000) in exchange for Marketers soliciting investors to acquire Defendants' debt and the Defendants' debt being successfully transferred to a third party investor (attached as "Exhibit 2").

10. The contract described in Paragraph 9 of this Complaint was subsequently discontinued.

11. On or about February 3, 2017, Plaintiff entered into the Agreement with Defendants.

12. The Agreement stated that Plaintiff is engaged by Defendants, "together with their affiliates and subsidiaries and any entity formed for the purpose of a Transaction" to act as their "exclusive consultant."

13. Specifically, the Agreement defined the engagement, in pertinent part, as: "During the term of this engagement, and as mutually agreed upon by Consultant[1] and the Company, Consultant will provide the Company with Financial advice and assistance in connection with a possible transaction or series of transactions involving all or a significant portion of the assets, securities or businesses of the Company and its affiliates and subsidiaries, whither directly or indirectly and through any transaction form, regarding the Company's outstanding indebtedness to CHS, Inc. in

---

[1] The "Consultant" referred to in the Agreement is Plaintiff Leo Khayet.

approximate amount of $250 million [the "Indebtedness"] [any of the foregoing, a "Transaction"]. On the Terms and subject to the conditions of this Agreement and in connection with the review of strategic alternatives, Consultant will assist the Company in such activities, analysis and planning as mutually agreed upon by the Company and Consultant, which may include reviewing, structuring, negotiating with one or more financial institutions in purchasing or restructuring the Indebtedness and executing the Transaction." Exhibit 1, at p. 1.

14. Subsection "a" of Section 4 of the agreement, titled "Fees," states that the parties agree to negotiate in good faith a fee payable to the Consultant payable upon the consummation of a Transaction in light of the Consideration Value" and subsection "b" of Section 4 states that "The Transaction success fee shall be a condition to closing and shall be paid to the Consultant directly from the lender or lenders involved in the Transaction." *Id.* at p. 2-3.

15. Section 5, titled "Termination" states that "The Company may not terminate the Engagement (including, but not limited to, its obligation to pay monthly retainer fees) for a period of six (6) months from the date of execution of this agreement, but may after such time, terminate the Engagement with or without cause by giving at least 30 days' advance written notice to Consultant." *Id.* at p. 3.

16. Section 15 of the Agreement is an exclusivity provision that states "The Company acknowledges that Consultant will serve in an exclusive capacity as the Company's agent with regard to the Transaction during the term of the Engagement. By agreeing to an "exclusive" engagement, the Company agrees that it will not enter into any contract or commence communication with another party with respect to any Transaction without the prior written agreement of Consultant. The Company represents that it is not a party to any contractual obligation [other than the purported agreement with Jenevein, Dezham, Still and Windemiller

group] that would be in conflict with the terms of the Engagement. In addition, the Company agrees that it will not use any work product of Consultant for the purposes of negotiations with any other parties, except as agreed in writing by Consultant. The Company agrees that during the term of the Engagement, all inquiries, whether direct or indirect, from prospective purchasers shall be referred to Consultant." *Id.* at p. 5.

17. On or about February 7, 2017, Plaintiff was informed by Ron Vanderveen, Defendants' general counsel, that TPG Special Situations Partners, LLC (hereinafter referred to as "TPG") has engaged with Defendants to refinance Defendants indebtedness.

18. Defendants violated the exclusivity provision located in Section 15 of the Agreement by not referring the inquiry made by TPG directly to Plaintiff, but rather chose to deal with TPG themselves.

19. On or about February 8, 2017, TPG drafted and sent Defendants a proposed term sheet, in which they asked for an exclusivity provision, which is in direct violation of the Agreement (attached hereto as "Exhibit 3").

20. On or about February 10, 2017, Defendants facilitated a meeting between TPG and CHS, the company that currently owns Defendants' debt, without obtaining explicit written approval from Plaintiff as required by the Agreement.

21. On or about February 13, 2017, Plaintiff spoke with a Managing Partner, Clint Kollar, who confirmed to Plaintiff that Dennis Boersen signed the TPG proposal in direct violation of the Agreement, although TPG was still determining whether or not they would execute the agreement.

22. On or about February 14, 2017, Plaintiff was contacted by Mayor Berkowitz of Business Capital LLC, one of Plaintiff's potential financing partners associated with the Transaction, and Mr. Berkowitz confirmed that BlueRock Solutions, a broker in New York, was attempting to

broker the purchase of the debt from CHS in violation of the Agreement.

23.  On or about February 24, 2017, Plaintiff spoke with Mike Still, a member of the Marketers as described in Paragraph 9 of this Complaint, and stated that Dennis Boersen contacted Mike Still directly by telephone on or about February 23, 2017, and informed Mike Still that the Fifty Million Dollar ($50,000,000) deal described in Paragraph 9 of this Complaint is back in effect and that Boersen was is looking for both short term and long financing, in violation of the Agreement.

## V.  RELIEF REQUESTED

24.  Plaintiff is entitled to preliminary and permanent injunctions prohibiting Defendants' from procuring any financing without obtaining Plaintiff's consent and otherwise acting contrary to the terms of the Agreement.

25.  Deciding whether to grant a preliminary injunction requires the consideration of four factors: (1) Plaintiff's likelihood of success on the merits; (2) whether Plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause harm to others; and (4) the impact of an injunction upon the public interest. No single factor is dispositive. District courts are to balance the four factors and not consider them prerequisite to the issuance of a preliminary injunction. *Port City Properties v. Union Pacific R. Co.*, 518 F.3d 1186, 1189-90 (10th Cir. 2008).

26.  At the outset, Plaintiff is likely to prevail on the merits. The Parties have contractual obligations that Plaintiff has clearly breached and continues to breach by willfully seeking financing options while ignoring the material provisions of the Agreement. Defendants' conduct is in blatant and in direct violation of the Agreement.

27.  Additionally, Plaintiff will suffer irreparable harm that cannot be compensated by money if Defendants are allowed to go forward with their plans and refinance their outstanding debt

without Plaintiff's involvement. First, Plaintiff has spent considerable time and effort amassing the goodwill of large financiers, primarily concentrated in New York City, and has staked his reputation with invaluable contacts by accepting the responsibility under this contract to provide the consulting services to Defendants under the Agreement. Using his connections, Plaintiff has received the correspondence of several financiers that are interested in pursuing a refinancing transaction with Defendants.

28. Further, if the deal conveyed to the financiers by Plaintiff were to be revoked, Plaintiff would suffer irreparable harm to his reputation in the industry, which is required to engage in similar business transactions in the future.

29. Plaintiff will also be irreparably harmed monetarily. Defendants execution of the contract outlined in Paragraph 9 of this Agreement with Marketers a little over a month to the date of execution of the Agreement at issue proves that the fair market value of the service Plaintiff was contracted to provide Defendants was at least fifty million dollars ($50,000,000). If Plaintiff is precluded from enforcing his contractual rights to properly obtain a reasonable fee in connection with a financing transaction Plaintiff will be forced to expend valuable resources litigating this matter to recover a fee rightfully owed to him under the Agreement.

30. There will not be substantial harm to Defendants or others during the time a preliminary injunction is in effect. Plaintiff has, is and will continue to provide all the consulting services prescribed to him under the Agreement, is still actively looking for buyers to refinance Defendants' debt and Plaintiff has found interested parties ready to perform due diligence in order to help Defendants refinance their debt. Plaintiff stands ready and willing to honor his obligations under the Agreement.

31. The proposed injunction does not prejudice the Defendants because Plaintiff is still

fulfilling his duties under the terms of the Agreement.

32. The only effects of granting a preliminary injunction in regard to public interests are positive. The first effect is that status quo will be preserved and that both Plaintiff and Defendants will be allowed to receive the benefits of their bargain under a mutually agreed-upon contract.

33. Secondly, by allowing Plaintiff to conclude his services for Defendants under the Agreement, Plaintiff will not have to enforce his rights by protracted litigation which will absorb the valuable resources of the Court and the public.

34. Thus, all the equities and other relevant factors weigh heavily in favor of granting the requested preliminary injunction. Plaintiff will have everything to lose and will suffer great prejudice if relief is not granted. To the contrary, Defendants will lose nothing and, quite possibly, will receive a better deal if the injunction is granted.

35. For the foregoing reasons, Plaintiff respectfully submits that no bond or security is necessary for the preliminary injunction to issue and request that such requirement under Fed. R. Civ. P. 65 (c) be waived.

WHEREFORE, PREMISED CONSIDERED, Plaintiff prays that an emergency hearing be held on his request for a preliminary injunction, that a preliminary injunction be issued prohibiting Defendants from conducting any procurement of refinancing unless they do so as prescribed with Plaintiff's involvement, and only with Plaintiff's express written permission, in a consulting role under the Agreement, until such time as the Agreement is concluded under the termination provision contained therein. Following the trial of this action, Plaintiff requests that this injunction be made permanent. Plaintiff also requests such further relief as this Court deems just and appropriate.

Dated this 26th day of February, 2017.

                                                Respectfully submitted,

/s/ Yevgeniy "Jason" Kotlyarov
Y. JASON KOTLYAROV (#78529)
Kotlyarov Law Group
107 W. 9th Street, Suite 205
Kansas City, Missouri 64105
(913) 725-0735
jason@gotlawyered.com

*Attorney for Plaintiff*

9